IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WILLIAM P. ANDREWS, ) | CASE NO. 1:06 CV 1356 |
| ) | |
| Plaintiff, ) | JUDGE ANN ALDRICH |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | **REPORT & RECOMMENDATION** |
| Defendant. ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, William P. Andrews, for disability insurance benefits and supplemental security income.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Andrews had severe impairments consisting of affective disturbance, depressed moods, and reduced tolerance for task complexity and workplace stress but did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1.[1]  The ALJ made the following finding regarding Andrews's residual functional capacity:

> The claimant has the residual functional capacity to perform mental nonexertional work-related activities including simple, repetitive work that requires only occasion [sic] contact with the public but he cannot engage in confrontations or negotiations.  He can have occasional changes in the work

---

[1] Transcript ("Tr.") at 23.

setting, but he cannot perform assembly line pace work or piecework. Due to his illiteracy, he is also limited to work where instructions are given orally or by demonstration. The claimant does not have any exertional limitations.[2]

Given that residual functional capacity, the ALJ determined that Andrews was capable of performing his past relevant work as an industrial cleaner.[3] He, therefore, declared Andrews not under a disability.[4]

Andrews asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Andrews asserts three issues for decision on judicial review:

- The ALJ found that Andrews did not have an impairment or combination of impairments that met or equaled one listed in Appendix 1. Does substantial evidence support that finding?

- The ALJ found that Andrews had no exertional limitations but non-exertional limitations as set forth in paragraph 5 of the findings (Transcript, page 24). Does substantial evidence support that finding?

- Did the ALJ properly evaluate Andrews's credibility?

I conclude that substantial evidence supports the ALJ's findings that Andrews's impairments do not meet or equal a listing in Appendix 1 of the regulations, that he can perform his past relevant work, and that the credibility of his complaints of severity of symptoms and limitations should have been discounted. I will, therefore, recommend that the decision of the Commissioner that Andrews was not disabled be affirmed.

---

[2] *Id.* at 24.

[3] *Id.*

[4] *Id.*

**Analysis**

**1.    Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[5]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[6]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[7]

---

[5] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[6] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[7] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard. The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

**2. The findings regarding the listing under § 12.05C of Appendix 1**

*a. The listing requirements*

According to Andrews's brief, the listing section at issue is § 12.05C.[8] Under § 12.05 of the listing:

> "Mental retardation refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied."[9]

Section C provides that mental retardation sufficient to meet the listing exists if the claimant demonstrates "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."[10]

---

[8] ECF # 20 at 7-13.

[9] 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.05C.

[10] *Id.*

-4-

Andrews was born on March 17, 1964.[11] He has a tenth grade education.[12] While in school he attended special education classes.[13] According to his work history report, he held a number of jobs from 1989 through 2000, the most recent being that of paint line cleaner.[14]

Andrews has extensive evidence of his IQ by way of numerous tests conducted throughout his life. In April of 1973, at age 9, Andrews took the Wechsler Intelligence Scale for Children (WISC); administered by Lauree Scheaf, a school psychologist.[15] It revealed a verbal IQ of 92, a performance IQ of 82, and a full-scale IQ of 86. Several months later, in June of 1973, he took the WISC administered by Isidore Helfand, Ph.D., a consulting clinical psychologist. On that test he scored a verbal IQ of 75, a performance IQ of 87, and a full-scale IQ of 79. In February of 1981, when Andrews was almost 17 years old, he took the Wechsler Adult Intelligence Scale administered by Deborah Ormston, a school psychologist.[16] This yielded a verbal IQ of 73, a performance IQ of 94, and a full-scale IQ of 81.

After the filing of the applications in this case, two psychologists administered the Wechsler Adult Intelligence Scale III to Andrews. In May of 2002, when Andrews was

---

[11] Tr. at 44.

[12] *Id.* at 14.

[13] *Id.* at 126, 143.

[14] *Id.* at 63.

[15] *Id.* at 240-41.

[16] *Id.* at 227-28.

38 years old, the test administered by Richard Halas, a psychologist, yielded a verbal score of 71, a performance score of 73, and a full-scale score of 69.[17] Eight months later, in January of 2003, he scored a verbal IQ of 61, a performance IQ of 56, and a full-scale IQ of 55 on the test administered by Donald Degli, a psychologist.[18]

### *b.    Meeting the listing*

My decision in *Bilka v. Commissioner of Social Security*[19] provides a useful template for analyzing this case. In *Bilka*, as here, the claimant had Wechsler scores during his developmental period (before age 22) at 71 or above, which did not meet the listing.[20] At age 38, he took the test again, which resulted in verbal, performance, and full-scale IQ scores of below 70.[21]

Bilka argued, as Andrews does here, that the listing does not require an IQ score within its limits from a test taken within a developmental period. Rather, such a score creates a rebuttable presumption that the claimant's IQ met the limits within the developmental period.[22] As I explained in *Bilka*, all of the authority cited for this rebuttable presumption

---

[17] *Id.* at 130.

[18] *Id.* at 145.

[19] *Bilka v. Comm'r of Soc. Sec.*, 252 F. Supp. 2d 472 (N.D. Ohio 2002).

[20] *Id.* at 474-75.

[21] *Id.* at 474.

[22] *Id.* at 475.

involved cases in which the records contained no IQ scores from the developmental period.[23] Where the claimant has undergone extensive IQ testing during the developmental period, and such testing has rendered scores that do not meet the listing, substantial evidence exists to support a finding that the listing has not been met.[24] Because Bilka had three test scores during the developmental period that did not meet the listing, substantial evidence supported the Commissioner's decision that he did not meet the listing in § 12.05C despite the test at age 38 evidencing the contrary.

Andrews, like Bilka, took the test three times during the developmental period, and each test yielded results not meeting the listing. Those tests constitute substantial evidence supporting the ALJ's finding.

The only additional authority not discussed in *Bilka* relied upon by Andrews is the decision of the Sixth Circuit in *Brown v. Secretary of Health and Human Services.*[25] In that case, the court held that a full-scale IQ score of 68 would qualify to meet the listing § 12.05C.[26] It appears from the decision, however, that the test at issue was administered to the claimant as an adult.[27] In fact, because of evidence in the record that the low test score could have been caused by the claimant's alcohol dependency as an adult, the court

---

[23] *Id.*

[24] *Id.*, citing *Burrell v. Comm'r of Soc. Sec.*, 238 F.3d 419, 2000 WL 1827799, at *2 (6th Cir. 2000) (unreported table decision).

[25] *Brown v. Sec'y of Health & Human Servs.*, 948 F.2d 268 (6th Cir. 1991).

[26] *Id.* at 270.

[27] *Id.* at 271.

remanded the case for determination of whether the mental impairment was manifested during the claimant's developmental period.[28] The *Brown* decision, therefore, does not provide overriding precedent in a case such as this where the claimant has multiple, non-qualifying IQ scores during the developmental period.

*c.     Equaling the listing*

In discussing the listing in § 12.05C in light of arguments that mental impairments not meeting that listing nevertheless equal it, the Sixth Circuit in *Foster v. Halter*[29] emphasized that to meet a listing "medical findings equal in severity to *all* the criteria for the one most similar listed impairment" must exist.[30] The court went on to state that a finding of equivalence under § 12.05C will "very rarely be required."[31] Here, in addition to the three sets of test scores in the developmental period that did not meet the listing criteria, there also exist pre- and post-developmental period diagnoses of borderline intellectual functioning rather than mental retardation.[32] Substantial evidence exists, therefore, supporting the finding that Andrews did not equal the listing in § 12.05C.

---

[28] *Id.*

[29] *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001).

[30] *Id.* quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in the original).

[31] *Id.* quoting *Riley v. Apfel*, 162 F.3d 1162, 1998 WL 553151, at *5 (6th Cir. Aug. 20, 1998).

[32] Tr. at 128 (Halas), 236 (Dr. Helfand). The claimant must satisfy the diagnostic description for the listed impairment, in this case "mental retardation." *Foster*, 279 F.3d at 354. A diagnosis of borderline intellectual functioning can provide substantial evidence that a claimant's impairment did not equal the § 12.05C listing. *Newland v. Apfel*, 182 F.3d 918, 1999 WL 435153, at *6 (6th Cir. 1999) (unreported table decision).

**3.	The findings of severe impairments and residual functional capacity**

Andrews challenges the ALJ's finding of severe impairments at step two of the sequential evaluation process on the ground that it did not include any impairments of the cervical and lumbar spine and also the finding at step four as to residual functional capacity because it imposed no exertional limitations.

As the Sixth Circuit stated in *Maziarz v. Secretary of Health and Human Services*,[33] an ALJ does not commit reversible error by failing to recognize an impairment that is severe at step two if he proceeds on step four and/or step five and the record does not support the inclusion of additional limitations in the residual functional capacity finding based on the omitted impairment.[34] Here the objective medical evidence of spinal impairments includes an MRI taken in November of 2004 that yielded the following cervical and lumbar findings:

- Mild disc bulging at C4, C5, and C6 without spinal cord compression;[35]

- Joint spurring and possible neural foramen narrowing at C3-4 and perhaps at C5-C6;[36] and

- Mild disc bulging at L4-L5 and L5-S1 without thecal sac or nerve root compression.[37]

---

[33] *Maziarz v. Sec'y of Health & Human Servs.*, 837 F. 2d 240 (6th Cir. 1987).

[34] *Id.* at 247.

[35] Tr. at 257.

[36] *Id.*

[37] *Id.* at 258.

In October of 2004, Dr. Mary Massullo conducted a physical, consultative examination.[38] She found full strength in both the upper and lower extremities,[39] the absence of muscle spasms,[40] no sensory deficits,[41] no muscle atrophy,[42] full range of motion in the cervical spine,[43] and full range of motion in the dorsal lumbar spine.[44]

Arguably, even with these minimal objective findings, the ALJ should have recognized an impairment in the cervical and lumbar spine at step two and limited Andrews to medium or light work at step four. Nevertheless, the failure to include such findings is harmless error in this case.

A limitation to medium or light work in the residual functional capacity finding would still have resulted in a finding of no disability. The vocational expert testified that Andrews's past relevant work as an industrial cleaner and as a restaurant cleaner were at the medium level.[45] Furthermore, she testified that he could perform work as a kitchen helper or laundry

---

[38] *Id.* at 210-14.

[39] *Id.* at 216.

[40] *Id.* at 217.

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.* at 218.

[45] *Id.* at 305, 307.

worker at the light level.[46] Given this testimony, even if the ALJ had incorporated exertional limitations to the level of light work, the outcome here would have been the same.

Where, on judicial review of an agency decision, a subsidiary finding is unfounded, the court will only remand the case to the agency for further consideration if substantial doubt exists as to whether the agency would have reached the same ultimate result with the erroneous finding removed.[47] Here, even assuming arguendo that the ALJ's step two and step four findings are defective, on the record in this case, the ALJ would still have found Andrews not disabled had the ALJ incorporated additional findings of severe spinal impairments and limitations to light or medium work.

### 4. The credibility finding

The ALJ found that Andrews's allegations of disabling symptoms and functional limitations were not reasonably consistent with the evidence of record in this case.[48] Andrews challenges this finding as lacking the support of substantial evidence.

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side

---

[46] *Id.* at 309.

[47] *Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. 1993) (unpublished table decision); *Pechatsko v. Comm'r of Soc. Sec.*, 369 F. Supp. 2d 909, 912 (N.D. Ohio 2004).

[48] Tr. at 23.

effects of medication; and treatment or measures, other than medication, taken to relieve pain.[49]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration. Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[50] The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[51] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.[52]

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents credible evidence of these factors, such proof might justify the imposition of work-related limitations beyond those dictated by the objective medical evidence.

---

[49] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

[50] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 732 (N.D. Ohio 2005).

[51] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[52] *Cross*, 373 F. Supp. 2d at 732.

The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad.  The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess his subjective complaints.[53]  A court may not disturb the ALJ's credibility determination absent compelling reason.[54]

An ALJ in a unified statement should express whether he or she accepts the claimant's allegations as credible and, if not, explain the finding in terms of the factors set forth in the regulation.[55]  If the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so.[56]  The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence.[57]  The articulation should not be conclusory;[58] it should be specific enough to permit the court to trace the path of the ALJ's reasoning.[59]

Here the ALJ did provide a unified statement about his reasons for discounting Andrews's credibility, which is not conclusory and does permit the discernment of the path

---

[53] *Buxton*, 246 F.3d at 773.

[54] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[55] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[56] *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

[57] *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1054 (E.D. Wisc. 2005).

[58] SSR 96-7p, 61 Fed. Reg. at 34384.

[59] *Blom*, 363 F. Supp. 2d at 1054.

of the ALJ's reasoning.[60] In that articulation, he discusses the factors identified in the regulations as well as the objective medical evidence. As stated above, the objective medical evidence does not support the conclusion that Andrews had exertional limitations rendering him disabled. Furthermore, that articulation outlines substantial evidence justifying multiple non-exertional limitations incorporated into residual functional capacity findings. As such, I can find no compelling reason for disturbing the ALJ's credibility finding.

**Conclusion**

Substantial evidence supports the finding of the Commissioner that Andrews had no disability. Accordingly, I recommend that the decision of the Commissioner denying Andrews disability insurance benefits and supplemental security income be affirmed.

Dated: March 3, 2009                          s/ William H. Baughman, Jr.
                                              United States Magistrate Judge

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[61]

---

[60] Tr. at 19, 21, and 22.

[61] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).